

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X

In re

PC LIQUIDATION CORP., f/k/a
PHOTOCIRCUITS CORPORATION,

               Debtor.
———————————————————————X

In re

ALPHA FORTY-FIVE, LLC,

               Debtor.
———————————————————————X

In re

BETA FORTY-FIVE, LLC,

               Debtor.
———————————————————————X

CADLE COMPANY II, INC.,

         Appellant,

    -against-

PC LIQUIDATION CORP., f/k/a
PHOTOCIRCUITS CORPORATION, OFFICIAL
COMMITTEE OF UNSECURED CREDITORS,
STAIRWAY CAPITAL MANAGEMENT, L.P.,
CMK CORPORATION, MATSUSHITA ELECTRIC
WORKS, LTD., and certain of their respective affiliates,
JOHN ENDEE, ENDEE FAMILY 1999 DYNASTY
TRUST, ALPHA FORTY-FIVE, LLC, and
BETA FORTY-FIVE, LLC,

         Appellees.
———————————————————————X

Chapter 11

**Bankruptcy No. 05-89022-288**

Chapter 11

**Bankruptcy No. 06-70167-288**

Chapter 11

**Bankruptcy No. 06-70168-288**

CV-06-1935(SJF)

**OPINION & ORDER**

FEUERSTEIN, J.

Pending before the Court is the motion of the Official Committee of Unsecured Creditors of PC Liquidation Cor., f/k/a Photocircuits Corporation (the Committee), to dismiss (1) the appeal filed by Cadle Company II, Inc. (Cadle) from an order of the United States Bankruptcy Court for the Eastern District of New York (the Bankruptcy Court) approving the "Stipulation and Agreed Order regarding Settlement Among Photocircuits Corporation, Stairway Capital Management, L.P., CMK Corporation, Matsushita Electric Works, Ltd., certain of their respective affiliates and the Committee" (hereinafter referred to as the "Secured Lender Settlement"); and (2) the appeal filed by Cadle from an order of the Bankruptcy Court approving the "Stipulation and Order Authorizing and Approving Resolution of Claims Against the Debtor's Estate Held and Asserted by John Endee, Steve Wohlgemuth, C. Keith Robbins, The Endee Family 1999 Dynasty Trust, Alpha Forty-Five, LLC and Beta Forty-Five, LLC" (hereinafter referred to as the "Insider Settlement"), as moot.[1]

I. BACKGROUND

A. PC Liquidation

Debtor PC Liquidation Corp., f/k/a Photocircuits Corporation (the Debtor) was in the business of manufacturing printed circuit boards. On October 14, 2005, the Debtor commenced filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the

---

[1] The motions of Stairway Capital Management, L.P., Steve Wohlgemuth and PC Liquidation Corp., f/k/a Photocircuits Corporation to join in the motion and reply of the Committee are granted and the motion to dismiss is deemed submitted on behalf of all joining parties.

1

PC Liquidation bankruptcy).

On February 6, 2006, the Bankruptcy Court granted the Debtor's motion for sale procedures, thereby authorizing the sale of substantially all of its assets to American Pacific Financial Corp. (AMPAC). The Bankruptcy Court entered an Amended Sale Order (the Sale Order) on February 23, 2006. According to the Committee, effective 12:01 a.m. on March 29, 2006, the Debtor consummated the sale of substantially all of its assets to AMPAC pursuant to an Asset Purchase Agreement (the APA) and the Sale Order ("the Sale") pursuant to Section 363 of the Bankruptcy Code. Cadle never sought a stay of the Sale Order and, in fact, did not oppose the sale of assets to the highest bidder. According to the Committee, since the closing, AMPAC has continued to operate the Debtor's business and has paid a significant number of the Debtor's post-bankruptcy administrative claims in furtherance of its obligations under the APA to assume a specified amount of liabilities of the Debtor.

  B. Alpha and Beta

Alpha Forty-Five LLC (Alpha) and Beta Forty-Five LLC (Beta) are entities owned by John Endee (Endee) (seventy percent [70%]), Steve Wohlgemuth (Wohlgemuth) (fifteen percent [15%]) and C. Keith Robbins (Robbins) (fifteen percent [15%]) (collectively, "the Insiders," of the Debtor) and own two parcels of real property (the Alpha and Beta Real Property), which they leased to the Debtor. The Alpha and Beta Real Property is contiguous with the real property in the City of Glen Cove owned by the Debtor and on which the Debtor operated its manufacturing facilities. According to the Committee, Alpha and Beta purchased the Alpha and Beta Real Property with loans made to them by the Debtor and the monthly rent payments made by the

Debtor to Alpha and Beta were equal to the respective amounts each lessor owed to the Debtor under the resulting promissory notes. Accordingly, no money flowed between the Insiders, Alpha, Beta and the Debtor.

On February 2, 2006, involuntary petitions for relief under Chapter 11 of the United States Bankruptcy Code were filed against Alpha and Beta (the <u>Alpha and Beta</u> bankruptcies). According to the Committee, the <u>Alpha and Beta</u> bankruptcies were administered concurrently with the <u>PC Liquidation</u> bankruptcy and assets of Alpha and Beta were transferred to AMPAC through the Sale.

C. Cadle

Cadle is an unsecured creditor of the Debtor pursuant to a promissory note in the face amount of two million six hundred eighty-four thousand two hundred dollars ($2,684,200.00) that it acquired from Fifth Third Bank, an equipment lender of the Debtor. Cadle was a member of the Committee but resigned following the entry of the orders from which it appeals.

D. The Secured Lender Settlement

According to the Committee, at the end of July 2004, Stairway Capital Management, L.P. (Stairway) acquired the position of the Debtor's senior secured lender under certain credit agreements, consisting of a term loan and a revolving line of credit, with the Debtor. According to Cadle, Stairway is a hedge fund which acquired the Debtor's secured lenders credit facility and, as an over-secured creditor of the Debtor, imposed $5.1 million in "forbearance fees" on the Debtor, which he claims constituted a fraudulent conveyance.

The financing of CMK Corporation and Matsushita Electric Works Ltd. (collectively, the CMK parties) was secured by liens subordinate to Stairway's position.

Early in the <u>PC Liquidation</u> bankruptcy, the Bankruptcy Court entered the "DIP Order", which (1) approved a debtor-in-possession financing agreement between the Debtor and Stairway; (2) imposed a deadline for the Committee, or any other party in interest, to assert any claims or causes of action against Stairway on behalf of the Debtor's estate (hereinafter referred to as the Challenge Period); and (3) provided that, in the event that no claims or causes of action were filed or commenced against Stairway by the expiration of the Challenge Period, all parties in interest, other than a trustee appointed under Chapter 7 of the Bankruptcy Code, would be forever barred from asserting any claims or causes of action against Stairway arising from its pre-petition relationship with the Debtor. During the course of the <u>PC Liquidation</u> bankruptcy, the Challenge Period was periodically extended upon the consent of Stairway while the Committee continued its investigation of the Debtor's transactions with Stairway. According to the Committee, the Challenge Period in the DIP Order expired on April 17, 2006, thereby creating a *de facto* release of Stairway from all claims and causes of action which might exist against it in connection with the <u>PC Liquidation</u> bankruptcy. According to Cadle, on February 15, 2006, prior to the expiration of the Challenge Period, it filed a motion and proposed scheduling order seeking standing to bring causes of action on behalf of the Debtor's estate against the Debtor's pre-petition secured lenders and to extend the challenge period, but the proposed order was never signed by the Bankruptcy Court.

On February 17, 2006, the Debtor filed a motion to approve the Secured Lender Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (Rule 9019

4

motion). According to the Committee, the Secured Lender Settlement, settles all claims held by the estate of the Debtor against Stairway and the CMK parties (collectively, the Secured Lenders). Under the terms of the Secured Lender Settlement, (1) Stairway contributed a total of $1.3 million to, or for the benefit of, the Debtor's estate; (2) the $32 million secured claims of the CMK parties was fixed at $5.2 million; (3) the CMK parties agreed to waive their deficiency claims; and (4) the claims of the Secured Lenders were to be paid from proceeds of the Sale to AMPAC. According to the Committee, in exchange for the consideration provided by the Secured Lenders, the Debtor's estate, and all other parties in interest, released any and all claims they might have had against the Secured Lenders.

On February 23, 2006, Cadle objected to the Secured Lender Settlement on the grounds that the Debtor provided no basis to conclude that it is fair and equitable and in the best interest of the Debtor's estate.

On March 10, 2006, the Bankruptcy Court approved the Secured Lender Settlement over Cadle's objection. According to Cadle, the Bankruptcy Court's approval was subject to post-hearing submissions by the Insiders with respect to the Insider Settlement. Upon entry of the order approving the Secured Lender Settlement, Cadle's application for standing to sue was rendered moot.

According to Cadle, on April 3, 2006, the Committee, Stairway and the Debtor, together with the other parties to the Secured Lender Settlement, agreed to waive the lack of finality of the Secured Lender Settlement.

According to the Committee, the Secured Lender Settlement was fully consummated at 12:01 a.m. on April 10, 2006, insofar as all funds necessary to effectuate the Secured Lender

Settlement and all other consideration called for thereunder have been exchanged in accordance with the terms thereof. Moreover, the Committee maintains that as a result of the consummation of the Secured Lender Settlement, the Challenge Period expired on April 17, 2006 and Cadle did not obtain an extension of the Challenge Period pending the outcome of the bankruptcy appeals. Therefore, according to the Committee, all parties in interest, including Cadle, are barred under the terms of the DIP Order and the Secured Lender Settlement from asserting any claims or causes of action against the Secured Lenders.

    E.    The Insider Settlement

According to the Committee, as of the date of filing of the <u>Alpha and Beta</u> bankruptcies, the Insiders' claims against the Debtor aggregated approximately $17.2 million. Under the terms of the Insider Settlement, entered into by the Committee, the Debtor, the Insiders, Alpha and Beta, (1) the Insiders reduced their general unsecured claims from $17.2 million to $11 million and caused Alpha and Beta to transfer the Alpha and Beta Real Property to AMPAC at closing, thereby satisfying a condition to AMPAC's obligation to close the Sale[2]; and (2) the Debtor's estate, and all other parties in interest, released the Insiders, Alpha and Beta from any and all claims they may have against them.

According to the Committee, Cadle objected to the Insider Settlement on the grounds that the Debtor's estate does not benefit from it and that the nature and validity of the Debtor's claims against the Insiders were not described or disclosed.

---

[2] According to Cadle, the order approving the Sale was not a condition precedent to closing, since only the Debtor's obligation to close was contingent upon such approval and the Sale was not voided in the event the Bankruptcy Court denied approval of the Settlements.

On February 17, 2006, the Debtor filed a Rule 9019 motion to approve the Insider Settlement. On March 10, 2006, the Bankruptcy Court approved the Insider Settlement over Cadle's objection and the Insider Settlement became effective immediately thereafter. According to the Committee, the Insider Settlement has been fully consummated, insofar as all consideration called for thereunder has been exchanged in accordance with the terms thereof.

F. Appeals

On April 26, 2006, Cadle filed notices of appeal from the Bankruptcy Court orders approving the Secured Lender Settlement and the Insider Settlement (collectively, the Settlements). By order entered May 4, 2006, the appeals were consolidated for all purposes. The issues designated by Cadle on appeal are: whether the Bankruptcy Court erred in (1) approving settlements which were not reasonable; (2) approving the Settlements notwithstanding the movants' failure to analyze the probability of success on the merits or applicable precedent, or to provide a cost benefit analysis with respect to pursuing the claims on the merits; (3) approving settlements which provided no tangible benefit to the bankruptcy estate; and (4) permitting the movants to supplement the record following the hearing. Cadle did not seek a stay of the Settlement Orders pending appeal.

II. DISCUSSION

A. Equitable Mootness

The Committee contends that the issues raised by Cadle on the appeals have become equitably moot because the Settlements have been fully consummated.

Cadle contends that the doctrine of equitable mootness is inapplicable because, *inter alia*, (1) no plan of reorganization has been confirmed and no rights of a "reorganized debtor" are implicated; (2) the orders from which it appeals are not inextricable intertwined with the sale of the Debtor's assets to AMPAC; (3) any order reversing the Bankruptcy Court's approval of the Settlements would not affect the rights of third parties, particularly AMPAC which is protected by Bankruptcy Code § 363(m), only parties who had notice of its objections and subsequent appeals; and (4) effective relief may be provided upon reversal, insofar as the proper remedy would be to direct the Bankruptcy Court to hear its standing motion and, if granted, to allow it a reasonable time to commence suit against the secured creditors asserting fraudulent conveyance and lender liability claims on behalf of the Debtor's estate.

An appeal must be dismissed as constitutionally moot when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party.'" Church of Scientology v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed.2d 293 (1895)). A bankruptcy appeal may also be dismissed even when it is not constitutionally moot, when, although "effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Metromedia Fiber Network, Inc., 416 F.3d 136, 143 (2d Cir. 2005) (quoting Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co. v. Official Committee of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 325 (2d Cir. 1993) (Chateaugay I)).

Contrary to Cadle's contention, the doctrine of equitable mootness is not limited to appeals of orders confirming reorganization plans or where the rights of parties bound by a

confirmed reorganization plan would be adversely affected. See, e.g. In re Adelphia Communications Corporation, 222 Fed.Appx. 7 (2d Cir. 2006), cert. denied sub nom Official Committee of Unsecured Creditors v. Adelphia Communications Corp., 128 S.Ct. 114 (2007) (involving an appeal of an order approving settlements related to the debtor's estate); In re Kassover, 98 Fed.Appx. 30 (2d Cir. 2004) (involving an appeal of an order of the Bankruptcy Court ordering the sale of a closely held real estate corporation); In re Delta Air Lines, Inc., 374 B.R. 516 (S.D.N.Y. 2007) (involving an appeal of an order of the Bankruptcy Court approving a Settlement Agreement pursuant to Bankruptcy Rule 9019)[3]; Allstate Ins. Co. v. Hughes, 174 B.R. 884 (S.D.N.Y. 1994) (involving an appeal from an order granting injunctive relief); In re Durso Supermarkets, Inc., No. 93 Civ. 5697, 1994 WL 17913 (S.D.N.Y. Jan. 20, 1994) (involving an appeal from an order approving a settlement). Rather, bankruptcy appeals may be equitably moot in two situations: (1) when an unstayed order has resulted in a "comprehensive change in circumstances," or (2) when a reorganization is "substantially consummated." In re Delta Air Lines, 374 B.R. 516 (citing, *inter alia*, Chateaugay I, 988 F.2d at 325 (comprehensive change in circumstances) and Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952 (2d Cir. 1993) (Chateaugay II) (substantial consummation of reorganization plan)); Allstate, 174 B.R. at 888 (accord); see also In re Adelphia, 222 Fed.Appx. 7 (involving a "comprehensive change in circumstances" resulting from an unstayed Rule 9019 order).

---

[3] I recognize that the Bankruptcy Court in In re Delta Air Lines issued an Order confirming the Joint Plan of Reorganization one day after it entered the Order approving the Settlement from which the appeal was taken. There was a separate, but related, appeal of the Order confirming the Reorganization Plan. However, the court expressly questioned the application of the "substantially consummated" standard to the appeal of the Settlement Order since the appeal related only to the validity of the Settlement Order and not to the full Plan. 374 B.R. at 523.

9

The five circumstances that must exist in order for an appeal of a bankruptcy transaction *not* to be equitably moot when there has been a "comprehensive change in circumstances," or when a reorganization is "substantially consummated" are: (1) that the Court can still order effective relief; (2) that such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity;" (3) that such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court;" (4) that the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and (5) that the appellant "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order * * * if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." Chateaugay II, 10 F.3d at 953.[4] (Hereinafter referred to herein as the Chateaugay II factors). An appeal of a bankruptcy transaction is equitably moot *unless* all five factors are met. See In re Kassover, 98 Fed.Appx. at 31.

It is clear that there has been a "comprehensive change of circumstances" occasioned by the consummation of the Settlement Orders. Cadle does not contest that the parties have fully implemented the Settlement Agreements according to their terms, insofar as all funds and consideration, including the $1.3 million Stairway contributed to the Debtor's estate, have been exchanged pursuant to the terms of the Agreements, administrative expenses have been paid,

---

[4] Although Chateaugay II involved the application of the equitable mootness doctrine to a reorganization plan that had been "substantially consummated," courts in this Circuit have applied the same five considerations to be instructive as well in the context of a "comprehensive change of circumstances." See In re Delta Air Lines, 374 B.R. at 523 (citing cases); see also Allstate, 174 B.R. at 889.

10

funds have been distributed to creditors, liens have been relinquished and claims have been waived. See, e.g. Allstate, 174 B.R. at 889 (holding that in determining whether a "comprehensive change of circumstances" has occurred, courts have considered such factors as whether administrative expenses associated with the bankruptcy have been paid and whether funds have been distributed to creditors); see also In re Durso Supermarkets, 1994 WL 17913, at * 2 (holding that a sufficient change of circumstances occurred to make it inequitable to reach the merits of the appeal where, *inter alia*, the debtor's largest creditor relinquished its lien on certain collateral, the debtor agreed to pay over to the creditor the proceeds of the sale of certain collateral, the creditor agreed to pay money to the debtor and paid some of that amount to the debtor, the debtor released all claims against the creditor and the creditor waived a certain amount of its otherwise allowed administrative claim). Accordingly, application of the Chateaugay II factors will determine whether Cadle's appeals from the Settlement Orders are equitably moot. See, e.g. In re Delta Air Lines, 374 B.R. at 523.

1. Application of the Chateaugay II Factors

Contrary to Cadle's claim that there is some effective relief available, insofar as this Court can vacate the Settlement Orders and direct the Bankruptcy Court to hear his standing motion and, if granted, allow him to pursue his fraudulent conveyance and lender liability claims against the appellees, the release of all claims against the Secured Lenders and the Insiders were a necessary part of the Settlement Agreements. As an integral part of the Settlements, the releases cannot equitably be undone in isolation from the exchanges of funds and consideration and, thus, vacatur of the Settlement Agreements must also necessarily result, *inter alia*, in the reinstatement of the

full claims and/or liens of the Secured Lenders and Insiders and the restitution of the $1.3 million contributed to the Debtor's estate by Stairway which, according to the Committee, have since been dispersed and are unlikely to be recovered. See, e.g. In re Delta Air Lines, 374 B.R. at 524 (finding that there was no effective relief available where the releases in the Settlement Order were a necessary part of the Settlement reached by the parties and the distributions under the Settlement Agreement had already been made); In re Adelphia, 222 Fed.Appx. at 8 (finding no effective relief available where the form of relief requested by the appellants would deny the amici curiae the benefits of their bargains in the settlements approved by the Rule 9019 order at issue, which would be "grossly inequitable").

Moreover, as Cadle admittedly did not seek a stay of execution of the orders approving the Settlements, and it would be inequitable to now reverse the orders appealed from, the doctrine of equitable mootness bars Cadle's instant appeals. See, e.g. In re Kassover, 98 Fed.Appx. at 31-32 (affirming the district court's dismissal of the appeal on the grounds of equitable mootness where the appellant failed to seek a stay of the Sale Order from which he appealed); In re Adelphia, 222 Fed.Appx. at 8 (holding that since the appellants did not pursue with diligence all available remedies to seek a stay of execution to the objectionable 9019 order, they must demonstrate that the relief they seek would not create inequitable results).

Since, as noted above, there is no effective relief available, the second and third Chateaugay II factors are inapplicable, as they require a showing that the effective available relief would not affect "the re-emergence of the debtor as a revitalized corporate entity" and would not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the

12

Bankruptcy Court," respectively. The fourth Chateaugay II factor is neutral or weighs in favor of Cadle, since all parties who would be adversely affected by the modification of the Settlement Agreements have notice of the appeal and an opportunity to participate in the proceedings. However, since Cadle was required to establish all five Chateaugay II factors to demonstrate that his appeals are not equitably moot in light of the "comprehensive change of circumstances" resulting from the consummation of the Settlement Agreements and his failure to seek a stay thereof, which he failed to do, his appeals must be dismissed as equitably moot.

Moreover, Cadle's contention that the appellees manipulated the system by, *inter alia*, structuring the Settlement Agreements with releases of claims and a rapid closing does not prevent the application of equity, since nothing prevented Cadle from asserting objections to the Settlements in the Bankruptcy Court, which it did and which were rejected, and from seeking a stay in this Court, which it failed to do. See, e.g. In re Delta Air Lines, 374 B.R. at 525 (finding that the timing and structure of the Settlement provided no basis for entertaining an appeal that cannot result in equitable or effective relief where the appellants were not foreclosed from making strenuous objections to the Settlement before the Bankruptcy Court and from seeking a stay of the Settlement Order).[5]

## III. CONCLUSION

For the reasons set forth herein, the Committee's motion to dismiss the appeals of the Rule

---

[5] In light of this determination, it is unnecessary to consider the parties' remaining contentions.

13

9019 Orders as equitably moot is granted and the appeals of the Rule 9019 Orders are dismissed in their entirety. The clerk of the Court is directed to close this case.

SO ORDERED.

/s/
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 17, 2008
Central Islip, New York

Copies to:

Silverman Perlstein & Acampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attn: Gerard R. Luckman, Esq.

Pryor & Mandelup, L.L.P.
675 Old Country Road
Westbury, New York 11590
Attn: Randolph E. White, Esq.

Farrell Fritz, P.C.
1320 Reckson Plaza
Uniondale, New York 11556
Attn: Louis A. Scarcella, Esq.

Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Attn: Madlyn Gleich Primoff, Esq.

Helen Reid & Priest LP
835 3rd Avenue
New York, New York 10022
Attn: Pete K. Anglum, Esq.

Westerman, Ball, Ederer, Miller
& Sharfstein, LLP
170 Old Country Road, 4th Floor
Mineola, New York 11701
Attn: Richard J. Gabriele, Esq.
Thomas A. Draghi, Esq.
John E. Westerman, Esq.

Office of the United States Trustee
560 Federal Plaza
Central Islip, New York 11722
Attn: Terese A. Cavanaugh

Forchelli, Curto, Schwartz, Mineo,
Carlino & Cohen, LLP
330 Old Country Road, P.O. Box 31
Mineola, New York 11501
Attn: Gary M. Kushner, Esq.